James J. ROSEMOND, Petitioner,

v.

Frederick MENIFEE, Warden, FCI Otisville, and U.S. Bureau of Prisons, Respondents.

No. 00 Civ. 7415 SAS.

United States District Court, S.D. New York.

Dec. 22, 2000.

Scott A. Srebnick, Miami, Florida, Joseph Bondy, New York, New York, for Petitioner.

David J. Kennedy, Assistant United States Attorney, New York, New York, for Respondents.

## MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

Petitioner James J. Rosemond, an inmate at the Federal Correctional Institution ("FCI") in Otisville, has brought a writ of habeas corpus pursuant to 28 U.S.C. § 2241 alleging that the Bureau of Prisons ("BOP") wrongfully denied him credit toward his federal sentence for 87 days spent in federal custody pursuant to a writ of habeas corpus ad prosequendum. Because petitioner has shown that he would not have otherwise been serving a state sentence but for the actions of federal law enforcement officials, the Bureau of Prisons is directed to credit those 87 days toward the completion of his federal sentence.

## I. FACTS

On January 27, 1999, while in the custody of the New York Department of Corrections, petitioner was sentenced to 18–36 months of imprisonment on state firearm and bail jumping charges. *See* James Rosemond's Complaint and Petition for a Writ of Habeas Corpus, and Incorporated Memorandum of Law ("Pet.") ¶ 7. This sentence was imposed *nunc pro tunc* to April 11, 1997. *Id.* The maximum expiration date on this sentence was set at April 3, 2000 while petitioner's conditional release date was set at April 3, 1999. *See* Affidavit of Delbert Sauers, Inmate Systems Manager at FCI Otisville, sworn to November 1, 2000 ¶ 4.

On May 26, 1998, petitioner was indicted on two federal firearms charges in the

Central District of California. Pet. ¶ 5. On March 25, 1999, petitioner was produced from the New York State authorities by the United States Marshals Service on a writ of habeas corpus ad prosequendum to appear before the federal court in California on April 12, 1999. Pet. ¶¶ 12–14. Petitioner remained in New York State custody from March 25, 1999 to April 1, 1999, at which point he was taken into federal custody and transported to the Central District of California.[1] Pet. ¶¶ 12–13. Petitioner remained in federal custody for 87 days until he was returned to New York State custody on June 26, 1999. Pet. ¶ 17. On June 28, 1999, petitioner was paroled from New York State authorities and released on federal bail. *Id.* On March 6, 2000, the district court for the Central District of California sentenced petitioner to 19 months on the firearms charges. Pet. ¶ 19.

Petitioner has exhausted his administrative remedies as he requested credit toward his federal sentence for the time he spent in federal custody on the federal writ through the BOP's administrative process. Pet. ¶¶ 22–26. The BOP denied petitioner's request at each administrative level. *Id.*

## II. DISCUSSION

### A. Credit for Time Under 18 U.S.C. § 3585(b)(2)

 It is well-established that the "Bureau of Prisons, and not the courts, determines when a defendant's sentence starts and whether the defendant should receive any credit for any time spent in custody." *United States v. Montez–Gaviria,* 163 F.3d 697, 700–01 (2d Cir.1998); *see also* 18 U.S.C. § 3585(a) (providing that a defendant's sentence begins "on the

date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served"). However, if a defendant disputes the BOP's calculation, he may seek judicial review of any jail-time credit determination by filing a habeas corpus petition under 28 U.S.C. § 2241, once administrative remedies are exhausted. *See Rogers v. United States,* 180 F.3d 349, 358 (1st Cir.1999). Because petitioner has exhausted his administrative remedies, this Court must now determine whether the BOP properly computed credit for the time he served prior to sentencing. This, in turn, requires application of the statute governing calculation of terms of imprisonment, which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited against another sentence.*

18 U.S.C. § 3585(b) (emphasis added).

 Application of this statute raises concerns of primary jurisdiction, a concept well-defined in this Circuit. The "sovereignty which first arrests the individual acquires the right to prior and exclusive jurisdiction over him, and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by,

---

**1.** While petitioner initially sought credit for the time between March 25, 1999 and April 1, 1999 in his administrative appeals, that period of time is no longer an issue as it was, in fact, credited by the State of New York toward petitioner's state sentence.

the judgment of conviction entered against the individual by the courts of that first sovereignty." *In re Liberatore,* 574 F.2d 78, 89 (2d Cir.1978). *See also United States v. Gonzalez,* No. 94 CR 313, 1998 WL 691080, *1 (S.D.N.Y. Sept. 30, 1998) (the priority of the first sovereign's jurisdiction remains in place until it is relinquished by dismissal of the state charges, bail release, parole release or expiration of the sentence). Moreover, transfer of an inmate to federal court pursuant to a writ of habeas corpus ad prosequendum does not amount to a relinquishment of primary jurisdiction. *See Liberatore,* 574 F.2d at 89 ("any 'loan' to the second sovereignty in compliance with such a writ or any other temporary transfer of custody from the sovereignty having the prior jurisdiction cannot affect in any way whatever any final judgment of conviction already entered against the prisoner there or affect the running of the sentence imposed pursuant to that judgment").

Technically, petitioner was still serving his state sentence when he was transferred into federal custody pursuant to the writ. Petitioner's state sentence therefore continued to run as petitioner had not yet been released from state custody. Thus, under the BOP's interpretation of 18 U.S.C. § 3585, the time petitioner spent in federal custody on the writ was properly credited toward his state sentence and could not be credited toward his federal sentence. *See Bultron v. United States,* No. 99 Civ. 727, 1999 WL 566322, at *2 (S.D.N.Y. Aug. 3, 1999) (year spent in a federal detention facility was credited toward petitioner's state sentence and could not be credited toward his federal sentence). Such a harsh result, however, does not recognize the realities of the situation and will not be countenanced by this Court.

### B. Due Process

Whether New York State has created a constitutionally protected liberty interest in conditional release, while relevant, is not dispositive. The statute governing conditional release provides:

A person who is serving one or more than one indeterminate or determinate sentence of imprisonment shall, if he so requests, be conditionally released from the institution in which he is confined when the total good behavior time allowed to him, pursuant to the provisions of the correction law, is equal to the unserved portion of his term, maximum term or aggregate maximum term; ....
The conditions of release, including those governing post-release supervision, shall be such as may be imposed by the state board of parole in accordance with the provisions of the executive law.

N.Y. Penal Law § 70.40(1)(b) (McKinney 2000).

In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 11–12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Supreme Court held that an inmate is entitled to due process safeguards in parole determinations when the state's parole provisions create a legitimate expectation of release. The Court found that the presence of mandatory language in Nebraska's parole statutes, directing that an inmate "shall" be released unless any one of four specifically designated reasons are found, created an expectancy of release "entitled to some measure of constitutional protection." *Id.* at 12, 99 S.Ct. 2100. The Court cautioned that "whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis." *Id.*

In considering the plain language of New York's Penal Law, it appears that its mandatory "shall, if he so requests" language creates a protectible liberty interest

under *Greenholtz.* However, in 1995 the Supreme Court reformulated the liberty interest analysis in *Sandin v. Conner,* 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

> Under Sandin, the presence or absence of mandatory language, while still relevant, is no longer dispositive in determining whether a particular statute gives rise to a protectible liberty interest. Rather, the focus of the inquiry should be on the nature of the interest allegedly created by the state.

*Barna v. Travis,* No. 97 Civ. 1146, 1999 WL 305515, at *2 (N.D.N.Y. Apr. 22, 1999). Judge John Martin of this Court applied a *Sandin* analysis to New York Penal Law § 70.40(1)(b) and found that "New York has not established a liberty interest in early release by virtue of regulation or statute." *See Doe v. Simon,* No. 96 Civ. 3482, 1999 WL 672999, at *2 (S.D.N.Y. Aug. 27, 1999).[2] *Id.* On appeal, the Second Circuit did not address the issue of whether § 70.40(1)(b) created a protected liberty interest. *See Doe v. Simon,* 221 F.3d 137, 139 (2d Cir.2000) ("Rather than reach the thorny question of whether a liberty interest existed here, we conclude that even if one did, Doe received sufficient process to satisfy his constitutional rights."). Thus, whether Penal Law § 70.40(1)(b) creates a constitutionally protected liberty interest in conditional release remains an open question in this Circuit.

2. In *Doe,* the plaintiff inmate, a convicted sex offender, was unable to propose a suitable residence by the time of his conditional release date, a requirement imposed by the Parole Board at the request of the Division of Parole. *Id.* at *1. As a result, plaintiff spent an additional 98 days in prison. *Id.* Plaintiff's constitutional claim alleged that this delayed release violated his due process rights. *Id.*

3. New York's Executive Law will soon provide that the State Board of Parole shall

While *Doe v. Simon* supports the proposition that New York's Executive Law permits the State Board of Parole to exercise discretion in determining when a state prisoner is conditionally released,[3] the discretion accorded to the State Board of Parole cannot be transferred to the BOP. Here, the federal action *prevented* the State Board of Parole from exercising its discretion, *see infra.* The inability to act is not the exercise of discretion. Thus, the reasoning of *Doe v. Simon* is inapposite.

### C. Fundamental Fairness

■ In general, the Bureau of Prisons is "ordinarily not required to give credit toward a federal sentence for time spent by a prisoner serving a sentence imposed by another jurisdiction for an unrelated offense." *Shaw v. Smith,* 680 F.2d 1104, 1106 (5th Cir.1982) (citing *Willis v. United States,* 438 F.2d 923, 925 (5th Cir.1971)). However, case law has established the following exception to this basic rule.

> Time spent in state custody, even if for an unrelated offense, must be credited toward time served on a federal sentence if the continued state confinement was exclusively the product of such action by federal law-enforcement officials as to justify treating the state jail as the practical equivalent of a federal one. If, for example, a state defendant is denied bail solely because of a federal detainer issued against him, the time spent in

have the power and duty of determining the conditions of release of the person who may be conditionally released under an indeterminate or reformatory sentence of imprisonment and of determining which inmates serving a definite sentence of imprisonment may be conditionally released *and when and under what circumstances.*

N.Y. Exec. Law § 259-c (McKinney 2000) (emphasis added). While this provision does not go into effect until September 1, 2001, it is indicative of the discretionary nature of the procedures now in place.

state custody awaiting trial must be credited to his federal sentence.

680 F.2d at 1106 (internal quotation marks and citations omitted). *See also Davis v. Attorney General*, 425 F.2d 238, 240 (5th Cir.1970) (if appellant was denied release on bail because the federal detainer was lodged against him, then that was time "spent in connection with the [federal] offense," since the detainer was issued upon federal authority, and he would be entitled to credit under 18 U.S.C. § 3568); *Brown v. United States*, 489 F.2d 1036, 1037 (8th Cir.1974) (per curiam) ("This court has recognized the authority of Davis."); *United States v. Blankenship*, 733 F.2d 433, 434 (6th Cir.1984) ("the evolved legal precedent also teaches that the credit against the federal sentence attaches only when the federal detainer is the exclusive reason for the prisoner's failure to obtain his release on bail"); *Peterson v. New York State Dep't of Corr. Servs.*, 100 A.D.2d 73, 473 N.Y.S.2d 473, 476 (2d Dept.1984) (interpreting 18 U.S.C. § 3568 to mean that credit must be given if the state defendant is denied bail solely as a result of a federal detainer).

Although these cases interpreted 18 U.S.C. § 3568[4] in the context of federal detainers, the underlying principle is applicable here. If absent the federal action— here a writ of habeas corpus ad prosequendum—the petitioner would have been released under available state procedures, then credit toward his federal sentence must be given. While a good deal of deference is due the BOP in computing jail-time credit, it cannot unilaterally lengthen a petitioner's state sentence by use of a federal writ. Petitioner's case is more compelling than those discussed earlier, given that he was taken into federal custody on April 1, 1999, two days prior to his conditional release date from state custody.

New York law provides that an inmate shall be "conditionally released from the [state] institution in which he is confined." N.Y. Penal Law § 70.40–1(b). Furthermore, every person released on conditional release shall be under the supervision of the state board of parole for a period equal to the unserved portion of the term. *Id. See also* N.Y. Exec. Law § 259–i(2)(b) (McKinney 2000) (persons released "shall, while on parole, conditional release or post-release supervision, be in the legal custody of the division of parole"). Thus, the New York State authorities lacked the legal authority to credit petitioner for the two days remaining on his state sentence which were spent in federal custody and release him while he was in federal custody. *See* Pet. ¶ 16. When petitioner was returned to state custody on June 26, 1999, he was released precisely two days later, which is strong evidence that the State of New York would have released petitioner on April 3, 1999 but for the fact that he was in federal custody pursuant to the federal writ. Accordingly, to deny petitioner credit toward his federal sentence— for time that was not credited toward his state sentence which was lengthened solely by the actions of the federal authorities— would represent a manifest injustice.

## III. CONCLUSION

For the foregoing reasons, Rosemond's petition is granted and the BOP is directed to credit his federal sentence for the 87 days he remained in federal custody before sentencing. The Clerk of the Court is directed to close this case.

---

**4.** Repealed and recodified at 18 U.S.C. § 3585(b).